UNITED STATES TRUST COMPANY OF NEW YORK *vs.*
RICHARD L. HERRIOTT & others.[1]

Norfolk.   May 14, 1980. — July 21, 1980.

Present: HALE, C.J., GOODMAN, & GREANEY, JJ.

*Practice, Civil,* Summary judgment, Jury trial, Judgment. *Constitu-
tional Law,* Privilege against self-incrimination. *Damages,* Attorney's
fees.

In an action seeking judgment against the defendants on two promissory
  notes, the judge did not err in denying the motion of one of the defend-
  ants for a continuance of summary judgment proceedings on the asser-
  tion that a response under Mass.R.Civ.P. 56(e) would involve a viola-
  tion of his privilege against self-incrimination where the defendant
  failed to file an affidavit as required by rule 56(f); where, in balancing
  the competing interests, the judge could have considered that portions
  of the defendant's answer to the merits raised matters which could be
  supported by a rule 56(e) affidavit without the danger of self-incrimi-
  nation, that the records in the plaintiff's possession would not have
  been protected by the privilege and could have been used by the de-
  fendant to resist summary judgment, that the continuance requested
  was open-ended and might have delayed the proceedings indefinitely,
  and that the plaintiff's claims on the notes were strong and well cor-
  roborated; and where the defendant made no request of the judge to
  examine his materials in in camera proceedings and did not seek an
  order impounding any information he might offer on the merits of the
  rule 56(a) motion or in support of his assertion of the privilege.
  [315-320]
In an action to enforce two promissory notes, the defendants were not en-
  titled to a jury trial on the question of damages and in the assessment
  of attorney's fees, following the allowance of summary judgment for
  the plaintiff, where the plaintiff's motion was well documented on the
  matter of damages and included statements setting out in detail the
  facts surrounding the execution of the notes, the overdue and unpaid
  principal and interest amounts, the amount of attorney's fees and ex-

---

[1] Aloise B. Herriott and various corporations, trusts and partnerships in
which Richard L. and Aloise B. Herriott had controlling interests.

penses incurred in connection with attempts to enforce the defendants'
obligations, the absence of any extension of time to repay, and the
demands for payment, and where the defendants failed to make any
response setting forth specific facts showing that there was a triable
issue on the question of damages. [320-321]

After allowing a motion for summary judgment for the plaintiff in an ac-
tion to enforce two promissory notes, the judge did not abuse his
discretion in entering a certificate that there was no just reason for
delay in the entry of judgment on the plaintiff's claims, despite the fact
that the defendants' counterclaims remained unadjudicated, where
conclusions were warranted that the counterclaims had the earmarks
of an afterthought, conceived in response to the plaintiff's action, that
nothing had been presented to demonstrate the counterclaims had
merit, and that the likelihood of recovery on the counterclaims was
therefore speculative, and where the plaintiff was financially sound
and in a position to satisfy any future judgment on the counterclaims.
[321-323]


CIVIL ACTION commenced in the Superior Court Depart-
ment on August 23, 1978.

The case was heard by *Nolan*, J., on a motion for sum-
mary judgment, and a proceeding for the assessment of at-
torneys' fees and expenses was heard by *Beaudreau*, J.

*Kirk Y. Griffin* for Richard L. & Aloise B. Herriott.

*Larry C. Kenna* for the plaintiff.

GREANEY, J.  By its amended action, United States Trust
Company of New York (Trust Company) sought judgment
against Richard L. Herriott (Herriott) and his wife, Aloise
B. Herriott, on two promissory notes,[2] aggregating $450,000,
plus interest, attorney's fees and expenses of collection.  The
action also sought to set aside alleged fraudulent transfers of
real and personal property made by one or the other of the
Herriotts to various corporations or trusts under their con-
trol and to reach and apply the Herriotts' interests in certain
of those corporations and trusts.  After answering to the
merits, the defendants set forth thirty-four counterclaims
against the Trust Company which asserted that the plain-

---

[2] The notes were made by Herriott and separately guaranteed by his
wife.

tiff's action had intentionally or negligently interfered with the defendants' business relationships, that the suit constituted an abuse of process, and that the Trust Company's collection efforts violated G. L. c. 93A. Eighteen of the counterclaims were dismissed on the plaintiff's motion; the sixteen which survived are exclusively concerned with the Trust Company's action to reach and apply the interests of Herriott and his wife in the various business organizations under their control. The Trust Company filed a motion for summary judgment on the notes (Mass.R.Civ.P. 56[a], 365 Mass. 824 [1974]), supported by affidavits stating current indebtedness (with interest) and amounts due for attorney's fees and expenses. Neither Herriott (represented below by counsel other than their counsel on appeal) replied to the merits of the rule 56(a) motion. Instead, Richard Herriott moved for a continuance of the summary judgment proceedings on the ground that a response to the Trust Company's motion would violate his Fifth Amendment privilege against self-incrimination. That motion was denied and the plaintiff's motion for summary judgment allowed, with a certification by the judge that "there [is] no just reason for delay" in entering a judgment for the Trust Company. Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). After an evidentiary hearing on attorney's fees, a second judge ordered entry of a judgment for the plaintiff in the amount of $532,052.31.[3] The Herriotts' appeal from that judgment questions the propriety of the denial of the motion for a continuance; contends that they were improperly denied a jury trial on the assessment of damages; and challenges the sufficiency and correctness of the judicial certificate under rule 54(b). We affirm the judgment.

1. Herriott argues that the judge abused his discretion in refusing to continue the summary judgment proceedings

---

[3] The components of the judgment are as follows:

| Damages (principal and interest on notes) | — | $488,744.60 |
| Attorney's fees | — | $ 41,179.25 |
| Expenses | — | $  2,128.46 |

based on the assertion that a response to the Trust Company's rule 56 motion would involve a violation of his privilege against self-incrimination. The motion requesting a continuance stated that Herriott was under investigation by a State grand jury in New York, that certain bank records, including records of the loans involved in this litigation, had been subpoenaed before that grand jury, that officers of the Trust Company "appear to have participated" in an investigation of Herriott's affairs by the Federal Bureau of Investigation, and that, based on the criminal investigation, Herriott had received a protective order prohibiting the Trust Company from taking his deposition until September 10, 1979. The motion was signed by his attorney; a supporting affidavit setting forth these facts or other facts that might establish the claim of privilege was not filed as required by Mass.R. Civ.P. 56(f), 365 Mass. 825 (1974).

There is no question that the Fifth Amendment privilege against self-incrimination "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy* v. *Arndstein*, 266 U.S. 34, 40 (1924). The scope of the application of the privilege is the same as in a criminal setting; that is, it "not only extends to [matters] that would in themselves support a conviction under a . . . criminal statute but likewise embraces [matters] which would furnish a link in the chain of evidence needed to prosecute the claimant for a . . . crime." *Hoffman* v. *United States*, 341 U.S. 479, 486 (1951). But the assertion of the privilege by a party in a civil case does not require the court to issue a blanket injunction staying the future course of the litigation. Nor is there a constitutional requirement that the civil proceeding must yield to the criminal one. See *DeVita* v. *Sills*, 422 F.2d 1172, 1181 (3d Cir. 1970). See also Note, Resolving Tensions Between Constitutional Rights: Use Immunity in Concurrent or Related Proceedings, 76 Colum. L. Rev. 674, 701 (1976). Instead, the rights of the parties to the civil action are to be considered as equal. However, it would constitute a clear abuse of discretion for the judge to turn a deaf ear to

a serious claim of privilege. See generally *Lefkowitz* v. *Cunningham*, 431 U.S. 801, 805-806 (1977). The judge's task is to balance any prejudice to the other civil litigants which might result from granting a stay, against the potential harm to the party claiming the privilege if he is compelled to choose between defending the civil action and protecting himself from criminal prosecution. See *Arthurs* v. *Stern*, 560 F.2d 477, 478-480 (1st Cir. 1977), cert. denied, 434 U.S. 1034 (1978). See also *Flint* v. *Mullen*, 499 F.2d 100 (1st Cir.), cert. denied, 419 U.S. 1026 (1974). As was well stated by the United States Court of Appeals for the District of Columbia Circuit:

> "There may be cases where the requirement that a criminal defendant participate in a civil action, at peril of being denied some portion of his worldly goods, violates concepts of elementary fairness in view of the defendant's position in an inter-related criminal prosecution. On the other hand, the fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. The overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied). The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side."

*Gordon* v. *Federal Deposit Ins. Corp.*, 427 F.2d 578, 580 (D.C. Cir. 1970). The judge's actions should be supported by a statement of reasons or by a record which demonstrates the basis for his conclusion with sufficient clarity to provide meaningful appellate review.

When the privilege is asserted in a summary judgment proceeding, the policy behind rule 56 asserts itself and must be recognized. That policy seeks "to make possible the prompt

disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved." *Community Natl. Bank v. Dawes*, 369 Mass. 550, 553 (1976), quoting from 3 Barron & Holtzoff, Federal Practice and Procedure (Rules ed.) § 1231, at 96 (Wright rev. ed. 1958). The rule itself expressly limits the judge's discretion to refuse summary judgment by providing that "[t]he judgment sought shall be rendered forthwith if the [materials] on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). To avoid summary judgment, an opposing party may not rely upon his pleadings or bald conclusions but "must set forth specific facts showing that there is a genuine issue for trial." Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). *Turner v. McCune*, 4 Mass. App. Ct. 864, 865 (1976). If he is unable to do so, he is expected to file *an affidavit* pursuant to section (f), explaining "that he cannot for reasons stated present by affidavit facts essential to justify his opposition." Mass.R.Civ.P. 56(f), 365 Mass. at 825. In these circumstances "the court may refuse the application for judgment or may order a continuance or may make such other order as is just." *Id.* A party claiming his Fifth Amendment privilege ordinarily should file an affidavit invoking section (f) rather than relying upon a motion for continuance signed by his attorney, if he wishes to avoid the entry of judgment which is mandated when he does not respond as required by section (e). See also *Inglett & Co. v. Everglades Fertilizer Co.*, 255 F.2d 342, 349-350 (5th Cir. 1958) ("if it takes an oath to establish or affirm that which is a fact . . . we doubt that it is conducive to the orderly administration of justice for counsel to become the voice on summary judgment"). But see *Brody v. United States*, 243 F.2d 378, 387 n.5 (1st Cir.), cert. denied, 354 U.S. 923 (1957). Thus, at the stage of the case designed to ferret out and dispose of unsubstantiated claims, there is a need for sufficient specificity in the assertion of the privilege to permit a judge weighing a re-

quest for constitutional shelter to fashion a remedy which protects the rights of all parties and accommodates the policies underlying the privilege and the rule.

Assuming that his counsel could raise Herriott's privilege in this case as his duly constituted agent (*Brody, supra*; contrast *Sousa* v. *Davenport*, 3 Mass. App. Ct. 715 [1975]), Herriott has not shown an abuse of discretion by the judge in denying a continuance. In balancing the competing interests, the judge could have considered that Herriott had answered the merits of the Trust Company's claims and had stated multiple counterclaims, that portions of his answer raised some matters or defenses which could be supported by a rule 56(e) affidavit without the danger of self-incrimination, and that Herriott was obliged to file an affidavit under rule 56(e), at least as to those defenses stated in his answer where there could be no conceivable criminal implications. Also weighing against the defendant's motion were the facts that the records in the plaintiff's possession would not have been protected by the privilege (*Couch* v. *United States*, 409 U.S. 322, 330-336 [1973]) and were open to full use by Herriott to resist summary judgment, that the continuance requested was generally open-ended and if allowed might have delayed the proceedings indefinitely, that the Trust Company's claims on the notes were strong, well corroborated and severable from the fraudulent conveyance claims (which more realistically might implicate the privilege), and that his motion for a continuance did not and could not apply to the responsibility of his wife on her separate guaranty. Moreover, Herriott made no request of the judge to examine his materials in light of the privilege in in camera proceedings; nor did he seek an order impounding any information he might offer on the merits of the rule 56(a) motion or in support of his assertion of the privilege. The judge was not obligated to accept Herriott's subjective impression that he would be involuntarily compelled to testify if he responded to the Trust Company's materials. As has been stated in the context of a criminal prosecution, "That the defendant faces . . . a choice between complete

silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." *United States* v. *Hearst,* 563 F.2d 1331, 1339 (9th Cir. 1977), cert. denied, 435 U.S. 1000 (1978). The constitutional protections in this context do not assure a civil litigant that he may remain silent and still enjoy the advantages that might have resulted from opposing the motion. On a sufficiently informative record and after giving a measure of deference to the judge's "personal perceptions of the peculiarities of the case," we feel that the judge acted properly. *Hoffman* v. *United States,* 341 U.S. at 486-487.

2. The Herriotts next claim that they were denied their right to a jury trial on the question of damages and in the assessment of attorney's fees. We disagree. The plaintiff's motion was well documented on the matter of damages and included statements by a Trust Company vice president and one of its legal counsel setting out in detail the facts surrounding the execution of the notes; the overdue and unpaid principal and interest amounts; the amount of attorney's fees and expenses incurred in connection with attempts to enforce the Herriotts' obligations; the absence of any extension of time to repay; and the demands for payment. These assertions shifted to the defendants the burden of making a response setting forth specific facts showing that there was a genuine issue for trial. *O'Brion, Russell & Co.* v. *LeMay,* 370 Mass. 243, 245 (1976). The Herriotts failed to meet that burden. Actions to enforce promissory notes are especially suited to summary disposition because often "after pretrial, no issue remains as to execution of the note and the amount due, and no affirmative defenses have been pleaded." 6 Moore's Federal Practice, par. 56.17(8), at 56-759 (1980) (collecting cases). *Community Natl. Bank* v. *Dawes,* 369 Mass. at 553-556. The absence of any demonstration by the defendants that a triable issue existed on the question of damages warranted the entry of summary judgment for the plaintiff on that issue. Mass.R.Civ.P. 56(c), (e), (f), 365 Mass. 824, 825 (1974).

The award of attorney's fees and expenses was also proper. The notes executed by Herriott expressly provided that the

borrower would be charged with all expenses (including a reasonable attorney's fee) incurred by the holder in connection with enforcement of the notes. The argument that the Trust Company had not yet "incurred" the expenses at the time of the hearing because its counsel had not billed for or received payment of fees at that time is frivolous. See *Lincoln St. Realty Co.* v. *Green*, 374 Mass. 630, 632 (1978). As with damages, nothing was filed by the defendants which showed a triable issue on the matter of counsel fees. The argument for a jury made before the judge who fixed the amount of the fees sought such a trial only on the question of damages. Our view of the transcript indicates that no argument was pressed for a jury to determine the reasonableness of the counsel fees. The amount of fees and expenses awarded was based on an extensive documentary record of time and charges supplied by the plaintiff's counsel, on the evidence at the hearing on the matter where counsel for the defendants was permitted to cross-examine on the question, and on the judge's consideration of the variables involved in fee setting discussed in the cases. See *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 569 (1933); *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629 (1978); *Perkins* v. *Blake*, 3 Mass. App. Ct. 415, 418 (1975).

3. The remaining question concerns the propriety of the determination that there was no just reason for delay in the entry of judgment on the Trust Company's claim on the notes and in directing the entry of judgment accordingly.[4] "The entry of such a certificate presents a matter for the trial court's discretion" (*Acme Engr. & Mfg. Corp.* v. *Airadyne Co.*, 9 Mass. App. Ct. 762, 764 [1980]); the exercise of that

---

[4] The judge who allowed the motion for summary judgment made the certification under rule 54(b). A second judge ordered the entry of judgment after updating the interest due on the notes and determining the amount to be awarded as attorney's fees and expenses. Contrary to the Herriotts' contention, the judge's certification on the motion for summary judgment is not equivocal, and it is plain to us that he was directing the entry of an immediate judgment on the claims settled by the allowance of that motion.

discretion is subject to appellate review. *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. 250, 252 (1980), citing *Sears, Roebuck & Co.* v. *Mackey*, 351 U.S. 427, 436, 437 (1956). The trial court's determination is entitled to a measure of deference, for that court is "the one most likely to be familiar with the case and with any justifiable reasons for delay." *Sears, supra* at 437. Nevertheless, such a certificate should not be entered "routinely or as a courtesy or accommodation to counsel" (*Acme, supra* at 764, quoting from *Panichella* v. *Pennsylvania R.R.*, 252 F.2d 452, 455 [3d Cir. 1958]), but only where, after balancing the competing factors, the judge in the trial court can say with assurance based on facts in the record that finality of judgment should be ordered to advance the interests of sound judicial administration (*Sears, supra* at 437), and to prevent the "danger of hardship or injustice" posed by delay. *Acme, supra* at 764, quoting from *Campbell* v. *Westmoreland Farm, Inc.*, 403 F.2d 939, 942 (2d Cir. 1968). See *Curtiss-Wright Corp.* v. *General Elec. Co.*, 446 U.S. 1 (1980).

The Herriotts argue that the presence of their unadjudicated counterclaims renders the certificate improper. The presence of counterclaims requires that the judge exercise special care before issuing the certificate, but their presence alone does not render a rule 54(b) certificate inappropriate. *Curtiss-Wright, supra* at 9. Counterclaims, whether permissive or compulsory, are to be evaluated like other claims, and "their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought." *Id.* In deciding that certification was appropriate, the judge could have considered the matters already discussed in connection with the motion for a continuance and the fact that the remaining claims and counterclaims were factually and legally distinct from the claims which had been determined by the motion for summary judgment. The judge could have concluded that the defendants' counterclaims "had the earmarks of an afterthought, conceived in response to [the plaintiff's] collection

action," that nothing had been presented to demonstrate that the counterclaims had merit, and "that the likelihood of recovery on the counterclaim[s] was therefore speculative." *Acme, supra* at 765. Finally, the judge could have considered the fact that the plaintiff was financially sound and in a position to satisfy a judgment on the counterclaims should any be entered. It has not been made to appear that the judge abused his discretion in ordering the entry of an immediate judgment.

*Judgment affirmed.*